UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

INTERNATIONAL SHIP REPAIR &
MARINE SERVICES, INC.,

    Plaintiff,

v.                                                                                    CASE NO.: 8:19-cv-00605-CEH-CPT

BARGE B. 215,

    Defendant.
_____/

### AMENDED MOTION FOR INTERLOCUTORY SALE OF VESSEL

Plaintiff, International Ship Repair & Marine Services, Inc., (hereinafter "ISR"), hereby moves the Court for an Order directing an interlocutory sale of Barge B. 215, pursuant to Supplemental Rule E (9)(a), and in support thereof would show:

### MEMORANDUM OF LAW

ISR requests that the Court order an interlocutory sale of Barge B. 215 on the grounds that the vessel's condition is deteriorating and there has been an unreasonable delay in securing the release of that vessel. Thus, the facts of this situation meet the criteria set forth in Supplemental Admiralty Rule E (9)(a), which controls interlocutory sales of arrested vessels. The Court may order an interlocutory sale at this time.

### FACTS

Barge B. 215 arrived at ISR's facilities in November 2018. At that time, Bouchard Transportation Company, Inc. (hereinafter "Bouchard") and ISR entered into an agreement whereby ISR would perform repairs on the Barge B. 215 in exchange for Bouchard's payment for those repairs. (Ex. 1, ¶ 3) On or about January 11, 2019, Bouchard instructed ISR to cease

# 37838448 v1

work on the Barge B. 215. (Ex. 1, ¶ 4) Thereafter, despite many communications between ISR and Bouchard, Bouchard never instructed ISR to restart the repairs. (Ex. 1, ¶ 4) After the cessation of work on Bouchard's instruction, ISR began charging dockage on that Vessel. By April 5, 2019, the unpaid costs and profits for ISR's repairs, dockage and other services provided to Barge B. 215 amounted to $2,811,628.00 (Ex 2, ¶¶ 6-11).

On March 11, 2019, ISR initiated an in rem arrest action against the Barge B. 215. On March 15, 2019, the Court entered an Order appointing ISR as the substitute custodian for the defendant. (Ex. 2, ¶ 12) ISR formally assumed that role on April 5, 2019, when the U.S. Marshal arrested the Barge B. 215 and handed over control of that vessel to ISR. Since that time, through August 15, 2019, the Barge B. 215 has accrued $474,243.00 in custodia legis costs. (Ex. 2, ¶¶ 9, 12) As defendant owed ISR $2,811,628.00, at the time of the arrest, the total sum due by defendant at this time amounts to $3,285,871.00. That amount is increasing by $2,986.00 per day. (Ex. 2, ¶ 12)

Since the time of the Barge B. 215's arrival at ISR's facility in November, 2018, Bouchard has made no serious effort to move that vessel. Indeed, Bouchard cannot move the Barge B. 215 at this time. (Ex. 3, pgs. 143-144) The U.S. Coast Guard has forbidden movement of the Barge B. 215 until certain work is performed on that vessel. (Ex 3, pgs. 144-145) Bouchard has made no effort to have the additional, necessary work performed. (Ex 3, pg. 142)

Defendant's instruction to cease work during the middle of the project has resulted in complications during the time the Barge B. 215 has been under arrest. Defendant terminated the work at a time in the project when old, corroded deck plating had been removed but had not yet been replaced. (Ex. 1, ¶ 5) That, in turned left the portions of the interior tanks of the Barge B.

215 exposed to the elements. (Ex. 1, ¶ 6) Upon the arrival of Florida's rainy season, rain water began accumulating in the barge's exposed tanks. (Ex. 1, ¶ 7) That has had two detrimental effects. First, since not all tanks are equally exposed, some tanks were taking on more water than others. (Ex. 1, ¶ 7) That situation, in turn, caused the vessel to list. (Ex. 1, ¶ 7) That list worsened to the point that the Coast Guard became concerned about the safety of the vessel and ordered ISR to correct the list. (Ex 1, ¶ 7) ISR responded by pumping water from the exposed tanks that were filling with water to non-exposed tanks on the other side of the vessel to ameliorate the list. (Ex. 1, ¶ 8) That operation has occurred twice now. (Ex. 1, ¶ 8)

The second problem resulting from the exposed tanks is that rain water has been mixing with the remnants of the asphalt contained in the tanks. (Ex. 1, ¶ 9) That, in turn, makes for contaminated water that has to be treated prior to being released into the environment, an expensive process. (Ex. 1, ¶¶ 9, 10) Thus, before this vessel can be used again, it will have to undergo the expensive process of removing the contaminated water from the tanks and treating that water. (Ex. 1, ¶¶ 9-10) The expense of pumping and treating the contaminated water will only grow with time as the Barge B. 215 sits idle.

## DISCUSSION

The Supplemental Rules for Certain Admiralty and Maritime Claims E (9)(a) empowers the Court, upon a motion from any party to the action, to order an interlocutory sale of seized property. That rule in pertinent part provides as follows:

> (i) On application of a party, the marshal, or other person having custody of the property, the Court may order all or part of the property sold – with the sales proceeds, or as much of them as will satisfy the judgment, paid into Court to await further orders of the Court – if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

    (B) the expense of keeping the property is excessive or disproportionate; or

    (C) there is an unreasonable delay in securing release of the property.

Supplemental Rule E(9)(a); <u>United States v. Esposito</u>, 970 F.2d 1156, 1160 (2d Cir. 1992).

According to the language of Supplemental Rule E(9)(a), to prevail on Motion for Interlocutory Sale, the lienor need only prove one of the three criteria.

In the instant case, ISR can demonstrate the existence of two out of the three criteria and, thus, its Motion for Interlocutory Sale of Vessel should be granted. The first basis to support an interlocutory sale is that the Barge B. 215 is perishable or liable to deterioration, decay or injury by being detained in custody pending resolution of the action.

There doesn't seem to be much law defining the standard for what level of deterioration is sufficient to justify an interlocutory sale. From a review of cases ordering an interlocutory sale on that basis, the standard appears to be a "you know it when you see it" standard. Many of the courts reviewing this issue have recognized that the inevitable deterioration of a vessel in salt water is exacerbated when the vessel sits idle for an extended period. *See, e.g.,* <u>Shelter Cove Marina, LTD. V. M/Y Isabella</u> *2017 WL 5906673 (S. D. Ca. 2017)*. Depreciation in value is also a concern recognized by courts. *See, e.g.,* <u>Branch Banking & Trust v. Fishing Vessel Toples$$$</u>, *2013 WL 6410814 (D.Md. 2013)* Courts have also noted that there need be no showing of actual deterioration but, instead, only that the vessel is liable to deteriorate. *See, e.g.,* <u>Peoples Bank V. P/C Ambassador of the Lake</u>, *2017 WL 1408159 (W.D. Wash. 2013)*

In the instant case, the Barge B. 215 has been under arrest since April 5, 2019. However, that vessel has been essentially unattended since the work stopped on January 11, 2019. Thus,

the vessel has been sitting idle for over 9 months. Certainly no good has occurred during those 9 months.

Moreover, the vessel did not start out in good condition. As noted above, at the time of the arrest, the Barge B. 215 existed in a state of disrepair. Mr. Donohue of Bouchard testified that the Coast Guard and the American Bureau of Shipping found serious problems with the Barge 215 prior to the arrest. (Ex. 3, ¶ 148) Seven months of additional inattention is not calculated to improve that situation. Trial in this matter is not scheduled until November, 2020. That additional 14 months can only exacerbate the known issues.

The biggest concern, however, relates to the incomplete repairs further degrading the condition of the Barge B. 215. As noted above, there are large holes distributed across the deck of the Barge B. 215, holes which admit the elements into the vessel's tanks. Tampa has experienced a summer with plentiful rainfall. That rainfall, in turn, has filled certain tanks on the Barge B. 215 to the extent that it caused the vessel to list. That list became pronounced enough that the U.S. Coast Guard became concerned about the safety of the Barge B. 215, and ordered ISR to correct the list. ISR complied with Coast Guard instructions and corrected the list by pumping water from exposed tanks to non-exposed tanks on the other side of the vessel to create an equilibrium. Rainwater, however, continues to accumulate in the vessel's tanks. Water intrusion to the point of causing a list that concerns the Coast Guard would certainly seem to qualify as deterioration, decay or injury. *Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie;* 633 F.2d 1338 (5th Circ. 1981) *(Vessel taking on water that had to be pumped out is a factor to show deterioration).*

The continued accumulation of water in the affected tanks shows that the vessel is liable to deteriorate further in the future. Since the water cannot be pumped from the vessel due to the contamination, ever more water will accumulate in the tanks. The amount of water in the vessel

could well reach a point where pumping water from one tank to another will no longer be a feasible method to correct any list, since the water cannot be pumped out of the vessel into the bay. When that point is reached, the entire vessel would be put in danger. Along those lines, hurricane season in Florida is about to peak. The volume of water that could be introduced into the tanks by even one hurricane could remove any margin.. In, <u>KFW v. M/V Yorktown</u>, *2014 WL 3339614 (N. D. Fla, 2014)*, the Court recognized that the arrival of hurricane season can be a factor in determining whether or not an interlocutory sale is appropriate from the deterioration standpoint.

That the water entering the Barge B. 215 becomes contaminated is another source of deterioration - economic deterioration. Economic deterioration is a factor that can be considered by a court in determining the appropriateness of an interlocutory sale. See <u>Bankers Trust v. Fishing Vessel Tople$$$</u>, supra. Indeed, physical deterioration and economic deterioration appear to be two sides of the same coin in that both reduce the value of the vessel to the detriment of the lienor and owner alike. In this case, the entry of the water into the vessel and the contamination of that water will necessarily result in the diminution of the value of the vessel. Before anyone can use the Barge B. 215 for its intended purpose, any owner will first have to remove and treat the water. That is an expensive process. It becomes an ever greater expense as more water accumulates the vessel. Obviously, a potential buyer of the Barge B. 215 will take that expense into account when deciding a reasonable purchase price, and the vessel will fetch less than it would have without the contaminated water.

As the result of the foregoing, the condition of the Barge B. 215 is deteriorating, both from an operational and economical standpoints. The deterioration is putting the safety of the

vessel at risk and reducing its value. For those reasons, Supplemental Rule E(9)(a)(i)(A) permits the Court to order an interlocutory sale at this time.

The second basis for ordering an interlocutory sale is there has been an unreasonable delay in securing the release of the Barge B. 215. The U.S. Marshall arrested the Barge B. 215 on April 5, 2019. Five months have elapsed since the arrest. A delay of four or five months is sufficient to justify an order for interlocutory sale. *See, e.g.,* <u>GB Capital Holdings, LLC. v. S/V Glori B.</u>, 2019 W.L. 27387 (S.D. Cal. 2019) *(four months),* <u>Jaffe v. M/S Breaking Wind</u>, 2017 W.L. 7731867 (S.D. Fla. 2017)*(5 months),* <u>Regents Bank v. Motor Yacht Royal Indulgence,</u> 2010 W.L. 4595792 (N.D. Fla. 2010) *("As a general rule, defendants are given at least four months to buy the vessel absent some other considerations").*

To be sure, defendant has petitioned the Court to set the amount of security and that motion is currently before the Court. If the Court sets the amount of security and defendant posts that security, then this motion will be moot. If, however, defendant fails to post security, the Court should order an interlocutory sale on an expedited basis.

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), prior to filing the instant motion, the undersigned conferred with counsel for defendant in a good faith effort to resolve the issues presented by this motion. Defendant's counsel does not agree to the relief sought by this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via email to the Clerk of Court and to Jules Victor Massee, Esquire, Hamilton Miller & Birthisel, LLP, 100 S. Ashley Drive, Suite 1210, Tampa, FL 33602 at jmassee@hamiltonmillerlaw.com; Robert B. Birthisel, Esquire, Hamilton Miller & Birthisel, LLP, 100 S. Ashley Drive, Suite 1210, Tampa, FL 33602

# 37838448 v1

at rbirthisel@hamiltonmillerlaw.com; Whittni Marie Hodges, Esquire, Hamilton Miller & Birthisel, LLP, 100 S. Ashley Drive, Suite 1210, Tampa, FL 33602 at whodges@hamiltonmillerlaw.com; and on Anthony J. Cuva, Esq., at Bajo Cuva Cohen Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602 at athony.cuva@bajocuva.com this 11th day of September, 2019.

GrayRobinson, PA

_____
Paul E. Parrish, Esq.
Fla. Bar No. 373117
1795 West Nasa Blvd.
Melbourne, FL 32901
Phone: (321) 727-8100
Facsimile: (321) 984-4122
Paul.parrish@gray-robinson.com