**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In Admiralty**

INTERNATIONAL SHIP REPAIR
AND MARINE SERVICES, INC.,

      Plaintiff,

vs.                                                                          Case No.: 8:19-cv-605-CEH-CPT

BARGE B. 215,

      Defendant, in rem

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION**
**FOR INTERLOCUTORY SALE OF VESSEL**

Defendants, BARGE B. 215 (the "Vessel") and B. No. 215 Corporation, owner of Barge

B. 215 (collectively "Defendants"), hereby file this Response in Opposition to Plaintiff's,

International Ship Repair ("ISR"), Amended Motion for Interlocutory Sale of the Vessel (DE

62)(the "Motion"), and request the Court deny Plaintiff's Motion and in support state:

**MEMORANDUM OF LAW**

This case arises from the Vessel's arrest by ISR which claims to have a lien on the Barge

for unpaid repairs.  Defendants dispute the lien because ISR was already paid what it was owed,

and because ISR is calculating its alleged lien by extrapolation.  ISR claims 85% of the work was

done and that it should be paid 85% of the contract price, when the facts show otherwise.  A

hearing on June 24, 2019 was held on Defendants' motion to vacate the arrest for lack of a lien,

where it was shown ISR's claim was largely speculative and unsupported.  A decision on that

motion is still pending.

B. No. 215 Corp. intends to operate the Vessel after repairs are completed. An interlocutory sale of the Vessel would prevent the Vessel from operating for B. No. 215 Corp., thus depriving the company of a profit making asset, when the case might be dismissed. Even if the funds are refunded to the Defendants upon Vacatur of the arrest, the Vessel cannot be replaced, which results in irreparable harm.

Moreover, ISR admits the Vessel cannot be moved as per the Coast Guard's Order. Hence the costs of keeping her at the berth in ISR's yard would be the same before and after the sale. In short, selling the Vessel before the case is resolved would accomplish nothing and would be futile.

On October 9, 2019, expert marine surveyor and professional engineer, Charles Gillespie, attended the Vessel at ISR's facilities. He reported the following:

- The Vessel currently has a relatively even heel and is trimmed by the stern. *See* Paragraph 4 of Charles Gillespie's Declaration, attached hereto as **Exhibit "A."**

- The Vessel is in an expected condition with areas of deck plate removed, some deck equipment partially disassembled, and surface corrosion on some areas of the exposed hold piping. This surface rust is removable and is not permanently harmful to the structure of the barge. [Ex. A, Para. 6].

- The majority of holds had some quantity of standing water, deeper in the after holds due to the barge's trim, and approximately two feet (2 ft) in hold #6S (judged by a submerged bucket on its side). More than half of the holds noted with water appeared to be water only, i.e. visibly clear to the bottom of the hold, while slightly less than half appeared to have some mixture of asphalt with the water and was black in appearance. [Ex. A, Para. 7].

- The holds' piping systems had NO significant signs of deteriorating or wastage, only typical surface corrosion. The pipes are protected by coating / a layer of asphalt, and the standing water is most certainly rain water; i.e. not brackish water from the bay and therefore is not as corrosive. [Ex. A, Para. 8].

- There is surface rust on the replacement plate.  Again, this is removable and not permanently harmful to the structure. [Ex. A, Para. 8].

- The Vessel's equipment in the generator and pump rooms are in the same condition as when the vessel entered the yard. The Vessel's crew quarters and office are in acceptable condition for current use. [Ex. A., Para. 9].

- The Vessel has some normal depreciation consistent with what would be expected during an extended repair period.  With typical shipyard remediation; i.e. pump / clean holds, complete deck repairs, routine maintenance / start-up procedures, the Vessel will be placed back in service in a condition superior to that in which it entered the shipyard. [Ex. A, Para. 10].

- There is no exceptional degradation to the barge or its piping systems due to this extended layup period. [Ex. A, Para. 10].

- The Vessel does not need to be sold in order to ensure that its value does not drastically decrease pending resolution of the dispute with International Ship Repair. [Ex. A, Para. 11].

Defendants maintain the Vessel is not deteriorating and there has been no unreasonable delay in attempting to release the Vessel.  This arrest is one of three arrests instituted by ISR, in this District, of barges operated by Bouchard Transportation Co. Inc. ("Bouchard").  The Barge B. No. 285 was arrested by ISR on or about the same dates as the arrest in this case. See *International Ship Repair v. Barge B. 285*, 8:19 CV 0602 (WFJ CPT).   The Barge B. No. 265 was also arrested on or about the same date as the arrest in this case. See *International Ship Repair v. Barge B. 265,* 19 CV 0608 (SDM SPF). Thereafter, Defendants and ISR entered into negotiations for the release of all three vessels and, so far, have secured the release of the B No. 285.

In this case, Defendants moved to dismiss the Complaint and Vacate the Arrest on the grounds ISR had no lien at the time of the arrest, because it had been fully paid. [ECF No. 19].

The Motion was referred to Magistrate Judge Christopher P. Tuite, who held an evidentiary hearing on June 24, 2019.  This motion remains pending.

The parties plan to mediate this case with the B. No. 265 case on November 15, 2019 with Peter Grilli, Esq.  Defendants have been actively litigating this matter because they intend to resolve the case with ISR and obtain a return of the Vessel.  If the Vessel is sold before mediation, mediation will be meaningless for Defendants and inopportune for ISR, as a distress sale of the Vessel could yield much less than any settlement that might be reached with the return of the Vessel to Bouchard.  In short, a settlement without the vessel could create a lose-lose situation for both parties, but by returning the Vessel to Defendants and settling the case, both parties could have a win-win result.

Moreover, permitting the Vessel to remain under arrest, pending mediation would, if mediation is successful, also save the commissions, fees and expenses on the sale by the Marshal.[1]  See, *Manual for United States Marshals – Procedures in Admiralty,* 1972 AMC 569.

## **DISCUSSION**

The Court should deny the Plaintiff's motion for order of sale of the Vessel [ECF No. 60] because the facts of this case do not satisfy the standard for interlocutory sale under Fed. R. Civ. P., Supp. Adm. R. E.

Supplemental Rule E(9)(a) states:

On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold--with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court--if:

---

[1] "The United States Marshals Service shall collect a commission of 3 percent of the first $1,000 collected and 1 ½ percent on the excess of any sum over $1,000, for seizing or levying on property (including seizures in admiralty), disposing of such property by sale, setoff, or otherwise, and receiving and paying over money, except that the amount of commission shall be within the range set by the Attorney General." 28 U.S.C. § 1921 (c) (1).

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Supp. Adm. R. E(9)(a)(i).   Of these, Plaintiff relies on the first and third grounds, namely, that the Vessel is in an allegedly deteriorating condition and that there has been an unreasonable delay in securing the release of the Vessel. [ECF No. 60, pg. 3-4]; Supplemental Rule E (9)(a)(i)(C).

The evidence cited by Plaintiff is insufficient to support either theory and its motion for sale of the Vessel should be denied.

### i)      Plaintiff's evidence of deterioration is insufficient.

Plaintiff alleges that the Vessel is decaying and/or deteriorating because:

- It has been sitting idle,

- It required deck repair when it was brought to ISR,

- The Vessel's tanks are exposed to the elements via holes in the deck, and

- The Vessel was/is listing because of rain water collecting in some tanks.[2]

[ECF No. 60, pg. 5].   These allegations are not supported by the facts and are generally insufficient to find that the Vessel is deteriorating.

A "generalized assertion that idle vessels will deteriorate," absent "other evidence that the Defendant Vessel is liable to decay," is insufficient to satisfy Rule E(9)(a)(i). *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283*, No. 08CV2044 BTM WMC, 2009 U.S.

---

[2] Notably, ISR is the Substitute Custodian for the Vessel.  [ECF No. 8].  To the extent that the Vessel's tanks are being exposed to water, thereby causing the Vessel to list, the problem is plainly ISR's mishandling.  ISR should not be permitted to shirk its responsibilities as Substitute Custodian and then claim that the Vessel is deteriorating because of its negligence.  The Court should not auction the Vessel when Plaintiff's biggest complaint could've been resolved by using tarps.

Dist. LEXIS 23844, 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009) (ordering the sale of the vessel on other grounds).

Cases granting sale of a vessel based on its deterioration uniformly rely on testimony from experts who detail how and why a vessel is deteriorating.  For example, in *Shelter Cove Marina, Ltd. v. M/Y Isabella*, the court granted sale of a vessel after an <u>expert broker</u> testified that, "[a]fter reviewing pictures of [the vessel]…[he] believe[s] that if [the vessel] is permitted to lay idle without routine maintenance and without proper lay-up preparations, the vessel's engines might (even if now operational) rust and freeze up, necessitating costly overhaul." No. 3:17-cv-01578-GPC-BLM, 2017 U.S. Dist. LEXIS 197402, at *4-5 (S.D. Cal. Nov. 29, 2017); *see also*, *Merchs. Nat'l Bank v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981)(upholding sale of a vessel based in part on <u>expert testimony</u> provided to the lower court that "the machinery on board would need to be completely overhauled."); *Cal. Yacht Marina - Chula Vista, LLC v. S/V Opily*, No. 14-cv-01215-BAS(BGS), 2015 U.S. Dist. LEXIS 32170, at *7-8 (S.D. Cal. Mar. 16, 2015)(finding that a vessel was deteriorating based in part on <u>expert testimony</u> that if the vessel "is permitted to lay idle without routine maintenance and without proper lay-up preparations, the vessel's engine might (even if now operational) rust and freeze up, necessitating costly overhaul."); *Vineyard Bank*, 2009 U.S. Dist. LEXIS 23844, at *3 (rejecting plaintiff's argument that the vessel was deteriorating even after an <u>expert broker</u> opined that the vessel would deteriorate.  The expert cited no specific evidence of how the vessel would deteriorate.).

Unlike the cases it cites, Plaintiff offers no credible expert testimony as to the deterioration of the Vessel.  Indeed, it relies only on a self-serving, conclusory affidavit from an

ISR employee. [ECF Nos. 60-1].[3]  Defendants are aware of no decision finding that a vessel is in deteriorating condition without supporting non-conclusory expert testimony.

Moreover, the Court should not order sale of the Vessel where Defendants' non-party expert witness provides evidence that none of the issues traditionally associated with a deteriorating vessel are present in the facts of this case. *See* Exhibit "A". And unlike the *Merchs. Nat'l Bank, Cal. Yacht Marina*, and *Shelter Cove Marina* decisions, there is *no evidence* that a costly overhaul will be necessary for the engines of the B. 215.

Plaintiff has not established that the Vessel is liable for deteriorating and its motion for sale of the Vessel should be denied.

### ii)    Plaintiff's allegations of "economic deterioration" are misplaced.

Nowhere in its papers does Plaintiff allege that the cost of maintaining the Vessel is disproportionate to the value of the Vessel.  Indeed, it cannot make such an argument because even after removing water from the tanks and completing the necessary deck work, the Vessel will still be worth significantly more than Plaintiff's claims. Instead, Plaintiff's claim for "economic deterioration" attempts to side-step the second ground under Supplemental Rule E(9)(a)(i) (i.e. that the expense of keeping the property is excessive or disproportionate) and shoehorn the alleged expenses associated with maintaining the Vessel as "economic deterioration" under the first ground of  Supplemental Rule E(9)(a)(i) (i.e. that the Vessel is liable for deterioration or decay).  Plaintiff's argument misses the mark.

Plaintiff cites only one case in support of its position:  *Branch Banking & Tr. Co. v. Fishing Vessel Toplesss*, Civil Action No. ELH-12-2364, 2012 U.S. Dist. LEXIS 170296, at *9 (D. Md. Nov. 29, 2012).  *Branch Banking* does not reference "economic deterioration" – a

---

[3] It is well settled that, "[C]onclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  The affidavit of Hugo Ortiz offers nothing more than speculation – certainly not reliable evidence.

phrase invented by the Plaintiff.  Based on expert appraisals of the vessels, the court in that case held that interlocutory sale of the vessels was appropriate because Plaintiff "established that the vessel [was] subject to deterioration and that there [had] been an unreasonable delay in securing release of the property." *Id*.  While the court stated in dicta that the value of a vessel – $1.1 million – was far less than the sum of approximately $4.5 million required to satisfy the owner's outstanding obligations, the court <u>did not</u> hold that this disparity was a consideration in the deterioration of the vessel.

In short, Plaintiff's argument again asks this Court to do something unprecedented. Plaintiff cites no case law supporting its conflation of grounds one and two under Supplemental Rule E(9)(a)(i).  Moreover, the one case on which Plaintiff relies concerned a vessel that was worth far less at auction that its outstanding obligations – which is not the case on the present facts.   There is no allegation and no evidence in this case that the incurred or anticipated expenses associated with maintaining the Vessel are disproportionate.   The Court should disregard Plaintiff's inventive "economic deterioration" argument.

### iii)      There has not been an unreasonable delay.

Plaintiff would have this Court believe that ordering interlocutory sale of a vessel is a bright line rule that calls for sale of a vessel after "a delay of four or five months." [ECF No. 60, pg. 7].  Not so.  What amounts to an unreasonable delay in securing the release of the vessel <u>depends on the circumstances</u>. *Essex Crane Rental Corp. v. DB Crossmar 14*, No. 16-8146, 2016 U.S. Dist. LEXIS 139758, at *14 (E.D. La. Oct. 6, 2016)(emphasis added). Courts have found a delay of several months is reasonable when the shipowner demonstrated active efforts to secure the release of the vessel. *See Action Marine v. M/V Norseman,* 1997 U.S. Dist. LEXIS 5898, *3 (E.D. La. 1997)(finding five-month delay not unreasonable when parties were actively

attempting to resolve the terms of the vessel's release).    Most of the cases that have permitted interlocutory sales involved the failure of the Owner to make a claim on the vessel.

The circumstances of this case indicate that Defendants have been actively litigating the case and attempting to free the Vessel. A Motion to Vacate the Arrest is still pending decision. *See, Action Marine v. M/V Norseman, supra.*   It would be extremely prejudicial to Defendants if the Court were to order sale of the Vessel only to subsequently find that the arrest should have been vacated in the first place.

Counsel's statement that Defendants have not expressed any interest in resolving this dispute is misplaced. The principals in this matter, Morton S Bouchard III, CEO of Bouchard and George Lorton, CEO of ISR have had meetings and telephone conversations in an attempt to resolve the arrests in all three cases, inclusive of this one.   Bouchard's Kevin Donohue has also met with Mr. Lorton.   The B. No. 285 case was settled but unfortunately, the negotiations have so far not been successful in the B. No. 215 and the B. No. 265 cases and Defendants are looking forward to mediation, in order to settle both of the remaining cases and obtain the return of their vessels.

Based on the circumstances of this case, the Court should find that there has not been an unreasonable delay and deny Plaintiff's motion for sale of the Vessel.

## CONCLUSION

**WHEREFORE,** Defendants Barge B. 215 and B. No. 215 Corporation, respectfully request this Court deny Plaintiff, International Ship Repair and Marine Services, Inc.'s Motion for Interlocutory Sale of the Vessel.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

Dated:  October 17, 2019

Respectfully Submitted,
HAMILTON, MILLER & BIRTHISEL, LLP
*Attorneys for Defendant, in rem*

By: /s/ Whittni M. Hodges
    Whittni M. Hodges, Esq.
    Florida Bar No: 095602
    whodges@hamiltonmillerlaw.com
    100 S. Ashley Drive, Suite 1210
    Tampa, Florida 33602
    Tel: 813-223-1900 / Fax: 813-223-1933
    E-SERVICE: CBBserve@hamiltonmillerlaw.com

    and

    FREEHILL, HOGAN & MAHAR LLP
    John J. Walsh, Esq.
    (*Pro Hac Vice*)
    80 Pine Street, 25th Floor
    New York, New York 10005
    Tel.: 212-425-1900
    Fax: 212-425-1901
    Walsh@freehill.com
    *Attorneys for Defendant, in rem*

## **CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on October 17, 2019, the foregoing document is being served on all counsel of record or pro se parties identified on the below Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Whittni M. Hodges
Attorney

## SERVICE LIST

## CASE NO.: 8:19-cv-00605-CEH-CPT

Paul E. Parrish, Esq.
Florida Bar No.:  373117
GRAY ROBINSON, PA
1795 West Nasa Blvd.
Melbourne, FL 32901
Tel:  (321) 727-8100
Fax:  (321) 984-4122
paul.parrish@gray-robinson.com
*Counsel for Plaintiff, International Ship*
*Repair and Marine Services, Inc.*