UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

INTERNATIONAL SHIP REPAIR &
MARINE SERVICES, INC.,

    Plaintiff,

v.                                                Case No: 8:19-cv-605-T-36CPT

BARGE B. 215,

    Defendant.
_____/

## **O R D E R**

This cause comes before the Court on International Ship Repair & Marine Services, Inc.'s Amended Motion for Interlocutory Sale of Vessel (the "Motion"). (Doc. 62). Defendant Barge B. 215 (the "Vessel") and B. No. 215 Corporation ("B. No. 215 Corp." and, together with the Vessel, the "Vessel Interests"), as owner of the Vessel, respond in opposition. (Doc. 69). The Court, having considered the parties' submissions and being fully advised in the premises, will grant the Motion.

**I.  BACKGROUND**

International Ship Repair & Marine Services, Inc. ("Plaintiff"), a company operating a marine repair business in Tampa, Florida, initiated this *in rem* action against the Vessel on March 11, 2019. (Doc. 1 ¶2). As alleged in Plaintiff's Verified Complaint *in rem* (the "Complaint"), on or about November 5, 2018, the Vessel was delivered to Plaintiff's yard. *Id.* at ¶4. Plaintiff performed repairs and provided berthing, along with other necessary services, to the Vessel on the order of the Vessel's owner, master, or other representatives, in whose custody the Vessel was entrusted by the owner. *Id.* As of February 28, 2019, a total of $2,866,215.33 was due and owing to Plaintiff as a result of Plaintiff's provided repairs, berthing, and other requisite services to the

Vessel. *Id.* at ¶6. Although Plaintiff demanded payment for its services in this amount, such charges have not been paid to Plaintiff. *Id.* at ¶8. Plaintiff claims entitlement to a maritime lien against the Vessel as a result of the provided services and berthing. *Id.* at ¶7. Through its Complaint, among other relief, Plaintiff requests the Court to: (i) order and adjudge that the Vessel be condemned and sold to pay the demand, along with prejudgment interest, costs, and attorney's fees; and (ii) enter judgment in favor of Plaintiff for the amount of incurred damages, plus interest, prejudgment interest, costs, and reasonable attorney's fees.[1] *Id.* at 3–4.

In addition to filing the Complaint, Plaintiff moved for an order directing the Clerk of Court to issue a warrant of arrest, (Doc. 2 at 1), which the Court granted on March 15, 2019, (Doc. 7 at 1). Plaintiff also moved the Court for appointment as the substitute custodian for the Vessel, highlighting its preparation to provide security, wharfage, and routine services for the safekeeping of the vessel at a cost substantially less than required by the United States Marshal. (Doc. 3 at 2). The Court granted this request on March 15, 2019, appointing Plaintiff to act as the substitute custodian of the Vessel and any equipment and property recovered on board. (Doc. 8 at 1).

Thereafter, the Vessel Interests moved to vacate the arrest of the Vessel and dismiss the Complaint (the "Motion to Vacate Arrest"). (Doc. 19 at 9). Following a hearing, (Doc. 43), the Court denied the Motion to Vacate the Arrest on November 14, 2019, (Doc. 71 at 17). The Court also granted-in-part the Vessel Interests' Motion to Set Security and Counter Security, setting the

---

[1] The Vessel Interests lodge counterclaims for false arrest and breach of contract against Plaintiff in response. (Doc. 40 ¶¶1–13). In relevant part, the Vessel Interests allege that the arrest of the Vessel was wrongful, brought in bad faith, and meant to apply economic pressure to Bouchard Transportation Company ("Bouchard") or B. No. 215 Corp. under circumstances in which Plaintiff had been instructed to cease work under the Repair Agreement. *Id.* at ¶9. The Vessel also alleges that such wrongful arrest has resulted in damages in the amount of $25,000.00 per day to B. No. 215 Corp., which will continue until the Vessel is released. *Id.* at ¶10.

2

amount of security for the release of the Vessel at $1,711,379.40, to be deposited into the Court registry in accordance with the Local Admiralty Rules. *Id.*

Plaintiff filed the Motion on September 11, 2019, during the pendency of the Motion to Vacate Arrest. Plaintiff seeks an order directing an interlocutory sale of the Vessel under Rule E(9)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions because the vessel's condition is allegedly deteriorating and there has been an "unreasonable delay" in securing the Vessel's release. (Doc. 62 at 1). The Vessel Interests filed a response in opposition. (Doc. 69). The Court held a hearing on the Motion on January 16, 2020. (Doc. 77). As such, the Motion is ripe for the Court's review.

## II.  LEGAL STANDARD

Rule E(9)(a) of the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions provides:

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.
>
> (ii) In the circumstances described in Rule E(9)(a)(i), the court, on motion by a defendant or a person filing a statement of interest or right under Rule C(6), may order that the property, rather than being sold, be delivered to the movant upon giving security under these rules.

Fed. Supp. R. E(9)(a)(i)–(ii).

Given the language of Supplemental Rule E(9)(a)(i), a party moving for a vessel's sale "need only demonstrate that one of [the Rule's] conditions is present to justify an interlocutory sale of a vessel." *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997) (Corrigan, Mag.). "Because Supplemental Rule E(9) provides for interlocutory sales, it does not require, or even mention, the resolution of the merits of any particular claim; instead, the Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." *Regions Bank v. Motor Yacht ROYAL INDULGENCE*, No. 3:10cv100/LAC/EMT, 2010 WL 4595792, at *3 (N.D. Fla. Oct. 13, 2010) (internal quotation marks omitted), *report and recommendation adopted*, No. 310cv100/LAC/EMT, 2010 WL 4595729 (N.D. Fla. Nov. 4, 2010). Significantly, "[t]he interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).

Finally, all sales of property must be made "by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest." Fed. Supp. R. E(9)(b). The proceeds of such sale must be paid forthwith into the Court's registry to be disposed of according to law. *Id.*

### III. ANALYSIS

Plaintiff argues that the Court must order an interlocutory sale of the Vessel for two reasons: (1) the Vessel is perishable or liable to deterioration, decay, or injury by its detention in custody pending the action's resolution; and (2) there has been an unreasonable delay in securing the release of the Vessel. The Court will address each basis.

### A. Perishable or Liable to Deterioration, Decay, or Injury by Being Detained in Custody

The first basis for ordering the sale of a vessel under Supplemental Rule E(9)(a)(i) is if the property is "perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action." Fed. Supp. R. E(9)(a)(i)(A). An analysis of cases in the Eleventh Circuit, and elsewhere, demonstrates that courts typically require the moving party to offer some type of evidence demonstrating that the subject vessel is liable to deterioration, decay, or injury, rather than allowing the moving party to rely on generalized statements regarding such conditions in order to support an interlocutory sale. *See, e.g.*, *Seacor Marine LLC v. FPC Sea Striker*, No. 8:14-cv-114-T-27TBM, 2014 WL 5018888, at *3 (M.D. Fla. Oct. 7, 2014) (Whittemore, J.) (recognizing that the claimants had offered no evidence of deterioration, aside from their general assertion that the non-use of the vessel rendered it susceptible to deterioration and depreciation in value); *Merch. Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981)[2] (holding the district court's assessment that the vessels were liable to deterioration was not clearly erroneous where the district court made "detailed findings" and received expert testimony); *Cal. Yacht Marina – Chula Vista, LLC v. S/V OPILY*, No. 14-cv-01215-BAS (BGS), at *3 (S.D. Cal. Mar. 16, 2015) (holding that the vessel was liable to deterioration where the plaintiff's expert, who had not personally inspected the vessel, addressed the implication of costly overhaul and the deterioration of the vessel's condition and value while under arrest).

Further, some courts at least consider diminution-in-value as a factor when evaluating liability to deterioration, decay, or injury. *See, e.g.*, *Jaffe v. M/S BREAKING WIND*, No. 17-60108-

---

[2] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). The Fifth Circuit issued its opinion in *Merchants National Bank of Mobile* after October 1, 1981.

CIV-ZLOCH/HUNT, 2017 WL 7731867, at *6 (S.D. Fla. June 13, 2017) (finding the defendant-vessel was liable to deterioration, decay, or injury because, among other reasons, there was testimony at a hearing that the vessel was a "depreciating asset" and contrary evidence was not presented) *report and recommendation adopted*, 17-60108-CIV, 2017 WL 7732306 (S.D. Fla. June 28, 2017); *Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, No. 3:17-cv-01578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017) (finding a professional yacht broker's analysis, including his statement that the vessel should be sold as soon as possible to preserve its value, to be credible).

Plaintiff argues that incomplete repairs have degraded the condition of the Vessel. (Doc. 62 at 5). According to Plaintiff, Bouchard, the entity managing the Vessel, instructed Plaintiff to cease working on the Vessel at a time when Plaintiff had removed the Vessel's old, corroded deck plating, but before Plaintiff had replaced the plating. (Docs. 62 at 2; 62-1 ¶4). Consequently, these unfinished repairs resulted in large holes distributed across the deck of the Vessel, exposing the Vessel's tanks to the elements. (Docs. 62 at 2; 62-1 ¶5).

Plaintiff offers the affidavit of Hugo Ortiz ("Ortiz"), Plaintiff's senior vice president, in support of the Motion.[3] (Doc. 62-1 ¶2). To rebut B. 215 Corp's assertion in its response that Plaintiff failed to offer any expert testimony, Plaintiff also offered Ortiz's testimony during the hearing. Identifying himself as a marine architect, Ortiz testified that he graduated from Vera Cruz

---

[3] Plaintiff also offers the affidavit of Bruce Rosen ("Rosen"), an employee of Plaintiff whose duties include preparing repair estimates, evaluating Plaintiff's costs during repair projects, and evaluating Plaintiff's costs and profits after the completion of repair projects. (Doc. 62–2 ¶¶1, 3). The Court previously considered Rosen's testimony when ruling on the Motion to Vacate Arrest and the Motion to Set Security and Counter Security. (Doc. 71 at 11, 13). According to Rosen, the total amount due to Plaintiff is $3,048,108.00 (Doc. 62-2 ¶13). Rosen also states that the total amount due for dockage between January 11, 2019 and April 5, 2019, was $208,930.00, whereas the amount of additional rent charges for scaffolding amount to $231,000.00 *Id.* at ¶¶9–10. The custodial charged totaled $236,480.00 as of June 24, 2019. *Id.* at ¶12.

University with a degree in naval engineering and marine architecture and completed marine structures postgraduate work in Japan. He also testified that he has worked in the ship repair industry for thirty years, which involves anticipating future problems based on deterioration.

In his affidavit, Ortiz states that rainfall has filled some of the Vessel's tanks with water, which caused the Vessel to list. *Id.* at ¶7. Indeed, this list became pronounced enough that the United States Coast Guard ordered Plaintiff to correct the list, which Plaintiff accomplished by pumping water from the exposed tanks to non-exposed tanks on the Vessel's opposing side. *Id.* at ¶¶7–8. Ortiz states that the operation will be needed consistently "[i]f the weather and rain continue as experienced."[4] *Id.* During the hearing, Ortiz admitted that he did not know the condition of the Vessel's internal structure, but that he believed "possible cracks" and "some holes in the walls inside" of the Vessel existed because of movement upon rainfall. Nonetheless, Ortiz admitted that he did not have any proof that cracks existed in the Vessel's hull, nor any evidence that the Vessel has deteriorated with respect to cracks from the time work was stopped to the date of the hearing. Indeed, Ortiz testified that he was merely giving his opinion and supposition that there might be some deterioration of the Vessel. He also admitted that he did not know the condition of the pumps, generators, lights, or equipment.

Plaintiff argues that the continued accumulation of water in certain tanks demonstrates that the Vessel is liable to deteriorate further in the future. (Doc. 62 at 5). Plaintiff also points out that the Vessel could be placed in danger when pumping water from one tank to another no longer serves as a viable method to correct any list. *Id.* at 6. Plaintiff claims that even more water will accumulate in the tanks, especially with hurricane season approaching, as the water cannot be

---

[4] Plaintiff represented during the hearing that further efforts to pump the water from the tanks have not been necessary because the tanks have not accumulated substantially more water.

7

pumped out of the Vessel due to contamination. *Id.* at 5–6. Plaintiff argued during the hearing that the accumulated water has caused stability problems for the Vessel.

Plaintiff also argues that "economic deterioration" serves as another basis for the Court to order an interlocutory sale of the Vessel. *Id.* at 6. In his affidavit, Ortiz states that the water entering the Vessel's tanks mixes with residual asphalt or other petroleum products in the tanks to contaminate the water. (Doc. 62-1 ¶9). According to Ortiz, this contaminated water cannot be removed from the vessel without violating "applicable environmental laws and regulations." *Id.* Ortiz states that, based on Plaintiff's experience, the cost of removing and treating the water would cost approximately $1.2 to $1.5 million. *Id.* at ¶10. In addition to the testimony explained above, Ortiz stated during the hearing that water intrusion *could* be a significant problem. When asked on cross-examination to point to any evidence that the condition of the Vessel's hull is deteriorating, he broadly cited the government's requirement that the Vessel be inspected every five years, as deterioration may exist after such time, and his lack of knowledge regarding whether any work had been previously been performed on the hull.

Plaintiff contends that the contaminated water serves as a source of economic deterioration to the Vessel. (Doc. 62 at 6). Consequently, any future owner will need to remove and treat the accumulated water before using the Vessel for its intended purpose and any potential buyer of the Vessel will take this expensive process into account when determining a reasonable purchase price of the Vessel, thereby reducing the value of the Vessel. *Id.* As such, Plaintiff argues that the Vessel's condition is deteriorating from an "economical" standpoint. *Id.*

In response to the Motion, the Vessel Interests argue that Plaintiff's offered evidence is insufficient, primarily pointing out that Plaintiff failed to provide requisite expert testimony regarding the Vessel's purported deterioration. (Doc. 69 at 5–7). As noted, Plaintiff sought to rebut

this argument by offering Ortiz's testimony at the hearing. The Vessel Interests offer the declaration of Charles Gillespie ("Gillespie"), a marine surveyor and professional engineer with 3D Marine, which is an independent surveying marine consulting company. (Doc. 69-1 ¶1). Gillespie, a licensed professional engineer and a marine surveyor for nine years, states that he was retained to examine the extent of any deterioration of the Vessel and the prospect for additional deterioration. *Id.* at ¶¶1–2. Gillespie made several findings based on his inspection of the Vessel, including finding that: (1) the Vessel is in an "expected condition," with surface corrosion on some areas of exposed hold piping, which is removable and not permanently harmful to the Vessel's structure; (2) the Vessel has some normal depreciation that is consistent with expected depreciation during an extended repair period; and (3) more than half of the holds noted with water were filled with water only, whereas less than half had a mixture of asphalt and water. *Id.* at ¶¶6–7, 10.

Additionally, the Vessel Interests dispute Plaintiff's arguments regarding "economic deterioration," arguing that Plaintiff invents this concept and improperly conflates two of the bases for an interlocutory sale under Supplemental Rule E(9)(a)(i). (Doc. 69 at 8). During the hearing, counsel argued that Plaintiff's only cited source of deterioration was the rainfall, yet Ortiz had failed to provide any analysis that proved such deterioration. Counsel also argued that the record lacked any evidence demonstrating that the value of the claim would soon exceed the value of the Vessel.

Plaintiff fails to show that the Vessel is liable to deterioration, decay, or injury, and the Motion is accordingly due to be denied on this basis. Ortiz's testimony regarding the liability of the Vessel to deterioration is unpersuasive. Although he established his background and qualifications in naval engineering and marine architecture, described the list of the Vessel, and remarked on the accumulation of water in certain tanks, Ortiz's testimony was grounded in

9

supposition. Ortiz admitted multiple times during cross-examination that he did not have proof of the alleged deterioration that he described. Despite describing the water accumulation, he acknowledged that he did not know the condition of the pumps, generators, lights, or equipment, and he admitted that he was unaware of the conditions of the Vessel's internal structures. The Court is cognizant that Rule E(9)(a)(i)(A) focuses on *liability* to deterioration, decay, or injury, but Ortiz's supposition-laden testimony nonetheless falls short. Because Plaintiff relied solely on Ortiz's testimony to carry its burden and Ortiz's testimony falls short, this argument is unavailing.

Plaintiff's argument regarding economic deterioration is also unpersuasive. In arguing that "economic depreciation" justifies the sale, Plaintiff cites to *Branch Banking & Trust Co. v. Fishing Vessel TOPLESSS*, No. ELH-12-2364, 2013 WL 6410814 (D. Md. Dec. 6, 2013). However, the *Branch Banking* court did not mention "economic depreciation." Instead, the court briefly mentioned diminution-in-value in passing. *Id.* at *2. *Branch Banking* is also readily distinguishable from the instant action, as the plaintiff in *Branch Banking* brought the *in rem* admiralty action for foreclosure of a preferred ship mortgage under the Ship Mortgage Act, 46 U.S.C. §§ 31301 *et seq.*, and the plaintiff's motion for summary judgment was before the court. *Id.* at *1. Here, the Court considers Plaintiff's request for an interlocutory sale under Supplemental Rule E(9). As noted above, however, some courts consider diminution-in-value when evaluating liability to deterioration, decay, or injury. Any effort to show the Vessel's alleged decrease in value still falls short in light of Ortiz's testimony, and Plaintiff fails to establish the Vessel's liability to deterioration, decay, or injury.

Therefore, Plaintiff's request for an interlocutory sale under Supplemental Rule E(9)(a)(i)(A) is due to be denied.

### B. Unreasonable Delay in Securing the Release of the Vessel

The third basis for ordering the sale of a vessel under Supplemental Rule E(9) is if "there is an unreasonable delay in securing release of the property." Fed. Supp. R. E(9)(a)(i)(C). Plaintiff argues that the Court should order the interlocutory sale of the Vessel because there has been an unreasonable delay in securing the release of the Vessel. (Doc. 62 at 7).

Plaintiff points out that the United States Marshal arrested the Vessel on April 5, 2019. *Id.* When Plaintiff filed the Motion, approximately five months had passed since the date of arrest. *Id.* During the hearing, Plaintiff emphasized that, as of the hearing, nine months had passed since the Vessel's arrest, which Plaintiff described as a delay of "double the time the courts generally find" as being unreasonable. Plaintiff further highlighted that, although B. No. 215 Corp. had previously argued against an interlocutory sale because the Motion to Vacate Arrest was outstanding and mediation was upcoming, the Court has ruled on the Motion to Vacate Arrest and the parties have mediated. Plaintiff also argued that the defendants here have never posted bond, entered into any stipulation, or otherwise attempted to secure the Vessel's release under Supplemental Rule E(5). Presently, more than one year has elapsed since the Vessel's arrest.

In its response to the Motion, the Vessel Interests argue that finding an unreasonable delay exists depends on the circumstances, not a bright-line rule, such as four or five months.[5] (Doc. 69 at 8). B. No. 215 Corp. also argues that case law suggests that courts typically permit interlocutory sales where the owner fails to make a claim on the vessel, which is distinguishable from the instant

---

[5] The response in opposition to the Motion relies on one case, *Essex Crane Rental Corp. v. DB Crossmar 14*, No. 16-8146, 2016 WL 5869790 (E.D. La. Oct. 7, 2016), to argue that finding the existence of an unreasonable delay depends on the circumstances. (Doc. 69 at 8). The court in *Essex Crane* stated that "what amounts to an unreasonable delay depends on the circumstances." 2016 WL 5869790, at *5. The Court agrees with this principle to the extent that the analysis herein is not based on a bright-line rule, but rather guidance from prior cases before the Court and a review of the record before the Court.

action. *Id.* at 9. During the hearing, counsel for the Vessel argued that, "from Bouchard's perspective, the owner of the barge [is] working" and "trying to make arrangements for the charter of this vessel after it's fixed," which would not be possible if the Vessel is sold. Counsel also represented that "Bouchard wants to try to solve this problem" and "they want that barge out of there more than anybody." Counsel for the Vessel was unaware of whether Bouchard intends to post the security into the Court registry. Counsel for the Vessel also pointed out that the Court ruled on the Motion to Vacate Arrest on November 14, 2019. On this basis, counsel argued that, even if the Court were inclined to follow the four-or-five-month rule articulated in cases cited by Plaintiff, the date of the Court's ruling on November 14, 2019, fell within four months of the date of the hearing.

This Court has previously found a seven-month delay since the time of a vessel's arrest to be unreasonable where an owner had not posted a bond, entered into a stipulation, or otherwise attempted to secure the release of the vessel under Supplemental Rule E(5). *M.D. Moody & Sons, Inc. v. McLaren*, No. 3:11-cv-1242-J-32JBT, 2012 WL 13136843, at *2 (M.D. Fla. July 30, 2012) (Toomey, Mag.), ("[T]he passage of seven months since the time of the Endeavor's arrest amounts to an unreasonable delay in securing the release of the vessel."), *report and recommendation adopted*, No. 3:11-cv-1242-J-32JBT, 2012 WL 13136840, at *1 (M.D. Fla. Nov. 15, 2012) (Corrigan, J.). *See also Seacor Marine LLC*, 2014 WL 5018888, at *3 (finding an unreasonable delay where the vessel had been in the substitute custodian's possession for over eight months and the vessel's owner had not "posted bond or otherwise attempted to secure the release of the Vessel").

However, when the Court has entered an order setting a bond or security for the subject vessel's release, the Court has also considered the length of time that has passed since the entry of

12

that order when evaluating a motion for interlocutory sale. *See*, *e.g.*, *20th Century Fox Film Corp.*, 992 F. Supp. at 1438; *Turner v. Neptune Towing & Recovery, Inc.*, No. 8:09-cv-1071-T-27AEP, 2010 WL 11651427, at *3 (M.D. Fla. Dec. 30, 2010) (Porcelli, Mag.). For example, in *20th Century Fox Film Corp.*, the subject vessel was arrested in February of 1997 and, upon the owner's motion, the Court ordered the bond set at the amount of $158,918.00 on April 15, 1997. 992 F. Supp. at 1437. However, no bond had been posted since the vessel's arrest and attachment in February of 1997. *Id.* The Court recognized that, during an accompanying hearing, the defendants represented that they did not have the financial ability to post the bond and failed to offer any counterargument to the plaintiff's assertion that there had been an unreasonable delay in securing the vessel's release. *Id.* at 1438. Emphasizing the eight-month delay that had passed since the April 15, 1997 bond order, the Court held that such delay, "with no release in sight and adjudication of the merits of the claim still months away," constituted an unreasonable delay. *Id.*

Similarly, in *Turner*, the Court signed an order for the arrest of the subject vessel on December 8, 2009. 2010 WL 11651427, at *1. Thereafter, on March 18, 2010, the Court held a hearing for the purpose of setting an appropriate bond amount under Supplemental Rule E(5), finding that the amount of Neptune's fairly stated claim was $48,436.21. *Id.* at *1, 3. Neptune moved for interlocutory sale of the vessel based on the vessel's deteriorating condition, the excessive expense of maintaining the vessel under seizure, and the owner's unreasonable delay. *Id.* at *1. The Court granted the request for an interlocutory sale based on the owner's unreasonable delay in securing the release of the property. *Id.* at *3. The Court emphasized that "[c]ourts interpreting [Rule E(9)(a)(i)(C)] have held that a vessel owner's 'unreasonable delay' in posting security for the release of the vessel alone justifies an interlocutory sale." *Id.* (citing, *inter alia*, *Merch. Nat'l Bank of Mobile*, 663 F.2d at 1341–42). The Court noted that the vessel had been

13

arrested on December 10, 2009, and the Court had entered its order setting the bond for the vessel's release on March 18, 2010. *Id.* As such, the Court found that the delay was unreasonable in light of the twelve months that had passed since the vessel's arrest and the nine months that had passed since the order setting the bond. *Id.*

Here, an unreasonable delay in securing the release of the Vessel exists. The United States Marshal initially arrested the vehicle over a year ago, on April 5, 2019. The Vessel Interests filed the Motion to Vacate Arrest on May 9, 2019. On June 3, 2019, over ten months ago, the Vessel Interests filed the Motion to Set Security and Counter Security. Aside from the filing of this motion, however, the record is devoid of any evidence that the Vessel Interests posted security, entered into a stipulation, or otherwise attempted to secure the Vessel's release under Supplemental Rule E(5). *See Merch. Nat'l Bank of Mobile*, 663 F.2d at 1341–42 (holding that the district court's finding there was an unreasonable delay in securing the release of the vessels was not clearly erroneous where, in the eight months following the vessels' arrests, the claimants did not post bond, enter into a stipulation, or otherwise attempt to secure the release of the vessels under Rule E(5)).

The Court granted-in-part the Vessel Interests' motion and set the security. The Court entered that order five months ago, yet the record is devoid of any indication that the Vessel Interests, Bouchard, or any other entity intend to pay the security. Three months ago, during the hearing, the Court specifically asked counsel for the Vessel whether there was any intention to post the security. Although counsel broadly claimed that Bouchard was "trying to get future charters," "trying to make arrangements," and was "working on it," he admitted that he was unaware of any plan or intention to post the security into the Court registry. Indeed, despite moving to vacate the arrest, requesting the Court to set security, and alleging in the counterclaim that the

14

purportedly false arrest of the vessel causes B. No. 2015 Corp. to incur $25,000.00 per day, neither the Vessel Interests nor any other entity has posted security. A review of the record reveals that the withdrawal of local counsel for the Vessel serves as the only development in the record since the hearing three months ago. (Docs. 82, 84). Thus, this action is distinguishable from *Action Marine, Inc. v. M/V NORSEMAN*, where the court denied the motion for interlocutory sale because "less than five months" had elapsed from the date of the Court's ruling and some undescribed event and the parties were actively disputing the terms of the release. No. Civ. A. 96-3945, 1997 WL 222412, at *1 (E.D. La. Apr. 28, 1997). Thus, while the Court is cognizant that five months is shy of the unreasonably delays of eight months in *20th Century* and nine months in *Turner*, respectively, the record nonetheless demonstrates that an unreasonable delay in securing the release of the Vessel exists.

Further, the Vessel Interests relied heavily in their response to the Motion on the pendency of the Motion to Vacate Arrest and the mediation, but the Court ruled on the Motion to Vacate Arrest and the parties conducted mediation, which resulted in an impasse, approximately five months ago. As such, these arguments are unpersuasive.[6] Also, in addition to there being "no release in sight," adjudication of this action on the merits is "still months away," *20th Century Fox Film Corp.*, 992 F. Supp. at 1438, as this action is set for the trial term commencing, at the earliest, approximately seven months from now, on November 2, 2020, (Doc. 58 at 2). Finally, to the extent that the Vessel Interests' objections to the Motion may be construed as requesting the Court to

---

[6] Similarly, the Vessel Interests' assertion in the response that "most of the cases" where courts permit interlocutory sales involve an owner's failure to make a claim on the vessel is unsupported by any case law. (Doc. 69 at 9). This Court and other courts in the Eleventh Circuit have ordered the interlocutory sale of a vessel despite an owner's claim. *See*, *e.g.*, *20th Century Fox Film Corp.*, 992 F. Supp. at 1438; *Seacor Marine LLC*, 2014 WL 5018888, at *3; *Jaffe*, 2017 WL 7731867, at *6–7. As such, this argument is unavailing.

deny the requested interlocutory sale because of the merits of the action, the focus of Supplemental Rule E(9) is on avoiding the complications related to maintaining an arrested vessel, not the resolution of the merits of a particular claim.[7]

Therefore, for the foregoing reasons, the Motion is due to be granted because an unreasonable delay securing the release of the Vessel exists under Supplemental Rule E(9)(a)(i)(C).

## IV.  CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Plaintiff's Amended Motion for Interlocutory Sale of Vessel (Doc. 62) is **GRANTED** to the extent that it requests an interlocutory sale of Barge B. 215 pursuant to Supplemental Rule E(9)(a)(i)(C).

2. The United States Marshal is authorized and directed to sell the vessel Barge B. 215, her engines, tackle, apparel, and equipment, at public action on at least one calendar week's notice to the highest and best bidder, in accordance with Local Admiralty Rule 7.05(r), and

---

[7] Counsel for the Vessel also argued in passing during the hearing that the Court must consider the "financial side" of the action and, as such, "there is no evidence that the value of the vessel is reaching the tipping point of the claim." However, the language of Rule E(9)(a)(i)(C) is clear. Further, counsel did not provide any supporting legal authority, but instead generally referred to "these cases." This Court has previously ordered interlocutory sales in accordance with Rule E(9)(a)(i)(C) independent of any consideration of the "financial side" of the action. *See*, *e.g.*, *20th Century Fox Film Corp.*, 992 F. Supp. at 1437–38 (reviewing evidence regarding the vessel's value simply because the owner objected only to the plaintiff's valuation of the vessel in opposing the interlocutory sale, but finding that there was an unreasonable delay because eight months had passed since the entry of the court's bond order, with no release in sight and adjudication months away); *Turner*, 2010 WL 11651427, at *2–3 (noting an affidavit offered by the plaintiff, who moved for an interlocutory sale on all three grounds under Rule E(9)(a)(i), which stated that maintenance of the vessel constituted a burden, before finding that an unreasonable delay existed based on the elapsed time). Finally, to the extent that this argument may be construed as attacking Plaintiff's failure to show that the expense of keeping the Vessel is excessive or disproportionate, Plaintiff does not seek relief under Rule E(9)(a)(i)(B).

subject to the Court's confirmation. Any net proceeds, following payment of Marshal's fees and charges and other costs of sale, shall be deposited into the Court's registry for distribution following the resolution of this action. The sale shall be conducted no later than **SIXTY (60) DAYS** from the date of this Order.

3. Pursuant to Local Admiralty Rule 7.05(q), the United States Marshal shall publish notice, in the manner prescribed by Local Admiralty Rule 7.01(g), twice: the first publication shall be at least one (1) calendar week prior to the date of the sale, and the second publication shall be at least three (3) calendar days prior to the date of the sale. The notices shall include the time and place where the sale will be conducted. The notices shall state that prospective bidders may, on application to the United States Marshal and, in such times and manner as he may direct, board the Vessel to conduct an inspection thereof. The notices shall also state that the highest and best bidder will be required to deliver to the United States Marshal at the time of the sale, in cash, certified check, or cashier's check, earnest money equal to $500.00 or 10% of the bid price, whichever sum is greater, and the bidder shall pay the remaining purchase price by cash, certified check, or cashier's check within three (3) working days of the sale, or if an objection is filed in accordance with Local Admiralty Rule 7.05(r)(7), within three (3) working days after the Court confirms the sale. In addition to the notice requirements of the Local Admiralty Rules, the parties are authorized to publish the Notice of Sale and engage in other appropriate advertising in such other specialized publications as the parties mutually agree, with the parties sharing the cost of this additional advertising equally.

4. The United States Marshal shall file a written report at the conclusion of the sale in accordance with Local Admiralty Rule 7.05(r)(5). Unless an objection is timely filed under

Local Admiralty Rule 7.05(r)(7), or the purchase is in default for failing to pay the purchase price, Plaintiff shall file a Request for Confirmation of Sale on the day following the last day for filing objections. The Request for Confirmation of Sale shall comply with the prescriptions of Local Admiralty Rule 7.05(r) and include a proposed Confirmation of Sale that substantially conforms in format and content to the form identified as MDF 710 in the Appendix of Forms of the Local Admiralty Rules.

**DONE AND ORDERED** in Tampa, Florida on April 24, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any